UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
1199 SEIU UNITED HEALTHCARE     : 13 Civ. 2768 (JGK) (JCF)
WORKERS EAST,                   :
                                :          REPORT AND
               Plaintiff,       :          RECOMMENDATION
                                :
     - against -                :
                                :
SOUTH BRONX MENTAL HEALTH COUNCIL, :
INC.,                           :
                                :
               Defendant.       :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE JOHN G. KOELTL, U.S.D.J.:

     The plaintiff, 1199 SEIU United Healthcare Workers East
("SEIU"), brings this action pursuant to the federal Worker
Adjustment and Retraining Notification Act (the "WARN Act"), 29
U.S.C. § 2101 et seq., and its New York analog (the "NY WARN Act"),
New York Labor Law ("NYLL") § 860 et seq., on behalf of its members
formerly employed by the defendant South Bronx Mental Health
Council ("SBMHC").  The plaintiff alleges that SBMHC violated the
federal and NY WARN Acts by providing inadequate notice before
shutting down operations of their mental health clinics.  The
Honorable John G. Koeltl, U.S.D.J., granted judgment by default
against SBMHC and referred this case to me for the calculation of
damages.  (Order of Default dated July 25, 2013 at 1).  On
September 27, 2013, I held an inquest, and although notice was sent
to the defendant, it did not appear.  The following findings are

therefore based on SEIU's submissions.  For the reasons set forth below, the plaintiff should be awarded damages in the amount of $501,298.69.   In addition, the plaintiff should be granted attorneys' fees and costs in the amount of $5,257.

Background

SBMHC was a nonprofit community health organization in the Bronx, where it operated four clinics.  (Complaint ("Compl."), ¶ 8).  The plaintiff is the exclusive bargaining representative of SBMHC's former clerical and direct care employees.  (Compl., ¶ 6). On March 5, 2013, SBMHC sent notification to SEIU that, due to "an unexpected and unforeseeable crisis in [SBMHC's] funding stream," SBMHC would be temporarily laying off nine employees represented by SEIU.  (Letter of Vicky Gatell dated March 5, 2013 ("Gatell Letter"), attached as Exh. A to Compl.).  The layoffs would be effective the following day.  (Gatell Letter).  On March 19, 2013, SBMHC sent a letter informing SEIU that it would be permanently closing all of its clinics by the end of the month.  (Letter of Humberto L. Martinez dated March 19, 2013, attached as Exh. B to Compl.).  Although the letter referenced the federal WARN Act and the NY WARN Act, it was sent only 10 to 12 days before the clinics were to be closed.  It did not provide a rationale for the closings.  SEIU contends that as SBMHC was well aware of its financial difficulties as early as January 30, 2013, the defendant

has no justification for providing its employees with such limited notice.  (Compl., ¶ 23).  One clinic, at 781 East 142 Street, was closed on March 29, 2013, and the remaining three locations were closed two days later.  (Compl., ¶ 15).  "[V]irtually all of [SBMHC's] employees at all of its locations" were terminated. (Compl., ¶ 15).

Discussion

    A. Jurisdiction

This Court has subject matter jurisdiction over the plaintiffs' federal WARN Act claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5), and over the NY WARN Act claim pursuant to 28 U.S.C. § 1367.  As SBMHC is a non-profit corporation organized and doing business in New York, it is subject to personal jurisdiction in this Court pursuant to New York Civil Practice Law and Rules § 301.

    B. Liability

When defendants default, all of the facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true.  See Lenard v. Design Studio, 889 F. Supp. 2d 518, 526 (S.D.N.Y. 2012) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  Nonetheless, a court "must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed." Jemine v. Dennis, 901

F. Supp. 2d 365, 373 (E.D.N.Y. 2012); see also GAKM Resources LLC
v. Jaylyn Sales Inc., No. 08 Civ. 6030, 2009 WL 2150891, at *2
(S.D.N.Y. July 20, 2009).

### 1. Federal WARN Act

Congress enacted the federal WARN Act to ensure that workers
receive advance notice before plant closings and mass layoffs. See
Grimmer v. Lord Day & Lord, 937 F. Supp. 255, 256 (S.D.N.Y. 1996).
This advance notice allows workers transition time to seek new
jobs, and, if necessary, enter skills training programs. See id.;
29 C.F.R. § 639.1.

A business enterprise with more than 100 full time employees
qualifies as an employer under the WARN Act, 29 U.S.C. §
2101(a)(1), and must give workers 60 days notice before any plant
closing or mass layoff, 29 U.S.C. § 2102. If an employer that
orders a plant closing fails to give the required notice, it is
liable to each affected employee for back pay and benefits for the
period of violation. 29 U.S.C. at § 2104(a)(1).

### 2. NY WARN Act

The NY WARN Act largely mirrors the federal WARN Act, with
three material differences. First, it sets a lower trigger
threshold for its protections. "Employer" includes all employers
that employ more than 50 full time employees, as opposed to 100,
NYLL § 860-a(3), and a "plant closing" is defined as the

4

termination of at least 25, as opposed to 50, employees at a single site of employment, NYLL § 860-a(6).   Second, its notification requirements are stricter, and require employers to give 90 days notice before plant closings or mass layoffs, as opposed to 60 days.   NYLL § 860-b(1).   Finally, it provides for administrative enforcement in addition to private suits.   NYLL § 860-f.   Given these stricter requirements, wherever there is liability under the federal WARN Act, there is necessarily liability under the NY WARN Act.

> 3. <u>Application</u>

As SMBHC employed 108 SEIU members on a full-time basis (Compl., ¶ 9), SMBHC is considered an employer under both the federal and NY WARN Acts, 29 U.S.C. § 2101(a)(1); NYLL § 860-a(3), and therefore is required to provide advance notice before any "plant closing" that results in employment loss for 50 or more employees at a single site of employment, 29 U.S.C. § 2101(a)(2); NYLL 860-a(6).   The plaintiff contends that by shutting down operation of its four clinics, the defendant's actions constitute a "plant closing" under the WARN Act.

The first step in determining whether a "plant closing" under WARN has occurred is to establish whether "the requisite number of employees suffered an 'employment loss'" at a single site of employment.   <u>New York's Health & Human Services Employees Union,</u>

1199/SEIU, AFL-CIO v. Grossman, No. 02 CV 6031, 2007 WL 2907386, at *20 (E.D.N.Y. Oct. 3, 2007). "'[W]hen fewer than fifty full-time employees suffer an "employment loss," WARN notice is not required.'" Local 819, International Brotherhood of Teamsters, AFL-CIO v. Textile Deliveries, Inc., No. 99 Civ. 1726, 2000 WL 1357494, at *3 (S.D.N.Y. Sept. 20, 2000) (quoting International Alliance of Theatrical and Stage Employees and Moving Picture Machine Operators, AFL-CIO v. Compact Video Services, Inc., 50 F. 3d 1464, 1466 (9th Cir. 1995)); Martin v. AMR Services Corp., 877 F. Supp. 108, 117 (E.D.N.Y. 1995), aff'd sub nom. Gonzalez v. AMR Services Corp., 68 F.3d 1529 (2d Cir. 1995) (holding no WARN requirements triggered where fewer than 50 employees suffered employment loss). SEIU has shown that 114 of its members lost their jobs when the defendant shut down operations at four distinct clinics. (Compl., ¶¶ 9, 15).

The next step is to determine whether SBMHC's four facilities should be considered a "single site of employment." Neither the federal statute nor the NY WARN Act define this term. The applicable regulations offer guidance, providing that separate locations may be considered a single site of employment if "they are in reasonable geographic proximity, used [by the employer] for the same purpose, and share the same staff or equipment." 20 C.F.R. § 639.3(i)(3); N.Y. Comp. Codes R. & Regs. ("NYCRR") tit.

12, § 921-1.1(p)(iii).   Absent "the same staff or operational purpose," separate facilities should not be considered a single site.  20 C.F.R. § 639.3(i)(4); 12 NYCRR § 921-1.1(p)(v) (no single site of employment where there is "separate management, produce different products or provide different services, and have separate workforces.").  "For example, assembly plants which are located on opposite sides of a town and which are managed by a single employer are separate sites if they employ different workers."  20 C.F.R. § 639.3(i)(4).

Courts outside this district, in examining the legislative history of the WARN Act, have concluded that although "the phrase 'single site of employment' is to be given a narrow interpretation," "there may be circumstances when geographically separate workplaces may be aggregated" as a single site of employment.  United Food & Commercial Workers Union Local No. 72 v. Giant Markets, Inc., 878 F. Supp. 700, 706 (M.D. Pa. 1995); see also Austen v. Catterton Partners V, LP, 268 F.R.D. 146, 150 (D. Conn. 2010).  The most decisive consideration, as highlighted in the regulations, is whether the work sites are either contiguous or in "reasonable geographic proximity."  Once the issue of proximity has been established, "the operational, managerial and labor variables become the decisive factors."  Frymire v. Ampex Corp., 61 F.3d 757, 766 (10th Cir. 1995); see also Bader v. North Line

Layers, Inc., 503 F.3d 813, 817-19 (9th Cir. 2007); Austen, 268 F.R.D. at 150-51.

Here, all four clinics were located in the South Bronx, in "reasonable geographic proximity" with no facility located more than 2.5 miles from another.  (Affidavit of Susan Cameron dated Oct. 25, 2013 ("Cameron 10/25/13 Aff."), ¶ 5).  Furthermore, the four facilities had "interrelated operations and common management."  (Cameron 10/25/13 Aff., ¶ 7).  All staffing and managerial decisions were handled in a centralized manner, staff and equipment were regularly shifted between the four facilities, and SBMHC issued a single payroll report.  (Cameron 10/25/13 Aff., ¶¶ 6-11).  As the defendant in this case has defaulted, these facts are taken as true.  See, e.g., Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998).  Other courts confronting similar facts have considered the "frequency of employee and equipment interchange as well as the day-to-day management and operation of each [facility] in question" as the most salient facts for determining whether separate facilities may be a single site of employment.  United Food & Commercial Workers Union Local No. 72, 878 F. Supp. at 703; see also Gorini v. AMP Inc., 94 F. App'x 913, 920-21 (3d Cir. 2004) (separate buildings that were "close together, and shared employees, job functions, and services" considered a single site of employment).

Here, the four clinics may be considered a single site of employment under the WARN Acts.  This is consistent with the purpose behind the WARN Act and its regulations, which "plainly focus on whether the resulting job loss will be concentrated in one geographic area." Teamsters Local Union 413 v. Driver's, Inc., 101 F. 3d 1107, 1109 (6th Cir. 1996).

C. Damages

The plaintiff claims damages of $1,411,417.16, of which exactly half are attributed to federal WARN Act violations and the other half to the NY WARN Act. (Proposed Findings of Fact and Conclusions of Law ("Findings of Fact"), ¶ 29).  Both statutes provide the same formula for calculating damages.  The rate of compensation is the higher of (1) the average regular rate received by such employee during the last 3 years of the employee's employment, or (2) the final regular rate received by such employee. 29 U.S.C. § 2104(a)(1)(A); NYLL 860-g(1)(a).  Liability is to be calculated "for the period of the violation, up to a maximum of 60 days." 29 U.S.C. § 2104(a)(1); NYLL 860-g(2).

1. Concurrent Liability

The plaintiff points to language in both the federal WARN Act and in the NY WARN Act's implementing regulations that their respective rights and remedies "are in addition to, and not in lieu of" other statutory rights and remedies as allowing for recovery

under both Acts.   29 U.S.C. § 2105; 12 NYCRR § 921-9.1. However, the NY WARN Act states that an employer's liability "shall be reduced" by "[a]ny liability paid by the employer under any applicable federal law governing notification of mass layoffs, plant closings, or relocations." NYLL § 860-g(5).  The plaintiff's claims arise out of a single incident, and it cannot collect under both the federal and the state WARN Acts.

### 2. Individual Calculations

Damages can be determined based on evidence presented at an inquest, detailed affidavits, or documentary evidence.  See Chun Jie Yin v. Kim, No. 07 CV 1236, 2008 WL 906736, at *3 (E.D.N.Y. 2008) (collecting cases).  The plaintiff has provided daily wage calculations for each affected employee based on his or her final average weekly pay.  (Payment in Lieu of Proper WARN Notice ("Damages Calculations"), attached as Exh. A to Findings of Fact). The employees can be grouped into four categories: those who received 10 days of notice, those who received 12 days of notice, those who were laid off effective March 6, 2013, and those who worked for SBMHC for fewer than four months.  (Damage Calculations).  To calculate the damages due, the plaintiff then subtracts the days of notice given before the clinics shut down from the mandatory 60 day notice period.  (Damages Calculations). The remaining number of days is then multiplied by the employee's

average daily wage.   (Damage Calculations).   For the several employees who worked for SBMHC for fewer than four months, liability was calculated, pursuant to the WARN Act, as "one-half the number of days that the employee was employed by the employer." 29 U.S.C. § 2104(a)(1); NYLL § 860-g(2); (Damage Calculations).

The nine employees subject to "temporary layoffs" as of March 6, 2013, with no notice provided, were entitled to a full 60 days' notification from the date of their layoff.  Because the defendant specified that the layoff was temporary (Gatell Letter), these employees had a reasonable expectation of being recalled. "'[U]nder the WARN Act, when an affected employee's layoff date is earlier than the date of the plant shutdown, the affected employee is entitled to notice of the closing 60 days before the date of that employee's layoff.'" Presser v. Key Food Stores Co-operative, Inc., No. 01 CV 8059, 2006 WL 2086346, at *15 (E.D.N.Y. July 25, 2006) (quoting United Mine Workers of America v. Martinka Coal Co., 202 F. 3d 717 (4th Cir. 2000)), aff'd, 316 F. App'x 9 (2d Cir. 2009); cf. In re Mr. Goodbuys of New York Corp., 164 B.R. 24, 29 (Bankr. E.D.N.Y. 1994) (employee laid off more than 90 days before mass layoffs did not qualify as "affected employee" under WARN Act).

### 3. Days of Violation

SEIU's calculations include back pay for each calendar day

within the violation period, as opposed to each work day. (Damages
Calculation). Other circuits are divided on this issue, and it has
not yet been addressed by the Second Circuit. Consistent with the
plaintiff's position, the Third Circuit has adopted a "calendar
days" approach to calculating WARN Act damages, providing back pay
for each of the 60 days of the violation period. See United
Steelworkers of America v. North Star Steel Co., 5 F.3d 39, 42-44
(3d Cir. 1993); see also United Mine Workers of America,
International Union v. Eighty-Four Mining Co., 159 F. App'x 345,
346 (3d Cir. 2005); Ciarlante v. Brown & Williamson Tobacco Corp.,
143 F.3d 139, 150 & n.11 (3d Cir. 1998). Every other circuit to
have considered the issue, however, applies a "work days" approach
that provides back pay only for the work days within the 60 day
notification period. See Joe v. First Bank System, Inc., 202 F.3d
1067, 1072 (8th Cir. 2000); Burns v. Stone Forest Industries, Inc.,
147 F.3d 1182, 1182-83 (9th Cir. 1998); Saxion v.
Titan-C-Manufacturing, Inc., 86 F.3d 533, 558-61 (6th Cir. 1996);
Frymire, 61 F.3d at 771-72; Carpenters District Council of New
Orleans & Vicinity v. Dillard Department Stores, Inc., 15 F.3d
1275, 1282-1286 (5th Cir. 1994).

The federal WARN statute states, in pertinent part, that
employers are liable for "back pay for each day of the violation."
29 U.S.C. § 2104(a)(1)(A). "Such liability shall be calculated for

the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer."  29 U.S.C. § 2104(a)(1).  The notification period, however, is calculated in calendar days.  29 U.S.C. § 2102.

The reasoning of the circuits that adopted a work day approach is persuasive.  While the use of "day" is ambiguous, the term "back pay" has a common meaning that is easily ascertainable.  See Dillard, 15 F.3d at 1283.  If SBMHC's employees had been provided the statutorily required 60 calendar days of notice, they would have had the full period to seek alternative employment but nonetheless would have received pay only for the days they worked. This interpretation is consistent with the purpose behind the WARN Act, which seeks to provide "a two-month uninterrupted income stream facilitating a job search."  See Burns, 147 F.3d at 1184-85. Thus, the damages here should be calculated per work day within the violation period.  Accord In re Jamesway Corp., 235 B.R. 329, 344-45 (Bankr. S.D.N.Y. 1999) (adopting work day approach to calculate WARN damages).

Under this reasoning, the days of back pay provided by the plaintiff should be revised downward to reflect only the work days during the violation period.  As referenced above, there are four distinct violation periods in this case, depending on when an

13

employee received notice of the shutdown. Assuming a Monday through Friday work week, the employees that SEIU calculated as entitled to 48 days of back pay should instead receive 34 days worth of back pay, the employees with 50 days of calculated back pay should receive 36 days of back pay, and the employees with 60 days of calculated back pay should receive 42 days of back pay.[1]   The claims for employees whose back pay was calculated as one-half of the days they were employed by SBMHC should also be adjusted to reflect work days only.[2]

The plaintiff has provided the average daily wage for each affected employee, drawn from SBMHC's payroll records. (Damage Calculations). Each employee's individual damages can be calculated by multiplying his or her average daily wage by the number of work days during the applicable violation period. After adding up all employee damages, the total lump sum is now $501,298.69. The plaintiff should apportion the damages among their members in accordance with the explanation provided above.

D. Attorneys' Fees & Costs

SEIU seeks $4,647 in attorneys' fees. Both the federal WARN

---

[1] These revisions are based on the actual number of weekdays during the period in question.

[2] Miguel A. Lopez II is entitled to 26 days of back pay; Bernis Medrano to 22.5 days, William Myers to 12.5 days, and Francine Richardson to 12.5 days.

Act and the NY WARN Act authorize awarding reasonable attorneys'
fees to the prevailing party "as part of the costs." 29 U.S.C. §
2104(a)(6); NYLL § 860-g(7).

An attorneys' fees award should be based on the court's
determination of a "presumptively reasonable fee." Sandoval v.
Materia Bros. Inc., No. 11 Civ. 4250, 2013 WL 1767748, at *3
(S.D.N.Y. March 5, 2013) (citing Arbor Hill Concerned Citizens
Neighborhood Association v. County of Albany, 522 F.3d 182, 189-90
(2d Cir. 2008)). This fee is reached by multiplying "a reasonable
hourly rate by the reasonable number of hours expended on the
case." Sandoval, 2013 WL 1767748, at *3; see Millea v. Metro-North
Rail Road Co., 658 F.3d 154, 166 (2d Cir. 2011).

Determining a reasonable hourly rate involves "a case-specific
inquiry into the prevailing market rates for counsel of similar
experience and skill to the fee applicant's counsel [, which] may
. . . include judicial notice of the rates awarded in prior cases
and the court's own familiarity with the rates prevailing in the
district." See Farbotko v. Clinton County, 433 F.3d 204, 209 (2d
Cir. 2005). The hourly rates must be "in line with those [rates]
prevailing in the community for similar services by lawyers of
reasonably comparable skill, experience, and reputation." Reiter
v. MTA New York City Transit Authority, 457 F.3d 224, 232 (2d Cir.
2006) (alteration in original) (internal quotation marks omitted);

15

see also <u>Simmons v. New York City Transit Authority</u>, 575 F.3d 170, 174 (2d Cir. 2009).  The relevant community in this case is the Southern District of New York.  <u>Arbor Hill</u>, 522 F.3d at 190.

       1. <u>Reasonable Hourly Rate</u>

According to the records submitted by the plaintiff, three attorneys, one paralegal, and one law clerk from the firm of Levy Ratner worked on the case.  (Amended Affirmation of Susan J. Cameron in Support of Plaintiff's Claims for Attorneys' Fees and Costs ("Cameron 8/29/13 Aff."), ¶ 6; Affirmation of Susan J. Cameron dated Oct. 30, 2013, ¶ 3).  Susan J. Cameron, counsel of record on the case, billed $185 an hour for her work.  Ms. Cameron has seven years of experience in the field of labor and employment law, and recently became a partner at Levy Ratner.  (Cameron 8/29/13 Aff., ¶ 7).  The majority of the work on the case was performed by Jorge Cisneros, a second year associate at Levy Ratner who was admitted to the bar in 2012.  (Cameron 8/29/13 Aff., ¶ 8).  Mr. Cisneros billed $185 per hour from April 22, 2013 to July 14, 2013, and $190 per hour for time worked thereafter.  (Transactions Listing Report ("Transactions"), attached as Exh. 1 to Cameron 8/29/13 Aff. at 1-3).  Suzanne Hepner, a partner and head of the bankruptcy and collections team, billed less than one hour at the $185 rate. (Transactions at 3).

Courts in this district have approved hourly rates of $300-400

for partners in labor and employment cases.  See Wong v. Hunda Glass Corp., No. 09 Civ. 4402, 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010) (reasonable hourly rate for "employment law litigators with approximately ten years' experience is between $250 per hour and $350 per hour."); Cesario v. BNI Construction, Inc., No. 07 Civ. 8545, 2008 WL 5210209, at *9 (S.D.N.Y. Dec. 15, 2008) (awarding $250/hour for senior attorney in FLSA case); New York District Council of Carpenters Pension Fund v. Perimeter Interiors, Inc., 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (granting summary judgment in ERISA case and awarding $425 per hour for partners, $300 per hour for associates, and $150 per hour for paralegals). The rate for Ms. Cameron's and Ms. Hepner's work is therefore well within a reasonable range.

While Mr. Cisneros was only recently admitted to the bar, courts in this district have awarded fees up to $200 per hour for associates with less than three years' experience. See Aqudelo v. E & D LLC, No. 12 Civ. 960, 2013 WL 1401887, at *2 (S.D.N.Y. April 4, 2013) (approving $200 per hour as market rate for junior associates with three years' experience); Anthony v. Franklin First Financial, Ltd., No. 09 Civ. 5578, 2012 WL 546668, at *3 (S.D.N.Y. Feb. 21, 2012) (awarding rate of $175 per hour for first-year associate in FLSA case); Torres v. City of New York, No. 07 Civ. 3473, 2008 WL 419306, at *2 (S.D.N.Y. Feb. 14, 2008) (finding that

"courts have awarded amounts ranging from $125 to $200 per hour for attorneys with less than three years' experience"). Accordingly, Mr. Cisnero's rate is reasonable and within the range of rates awarded in this district.

The hourly rates for work done by the paralegal and the law clerk are also commensurate with rates awarded in this district. See Gurung v. Malholtra, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) (ordering hourly rates of $150 for law clerks and $100 for paralegals); Perimeter Interiors, 657 F. Supp. 2d at 424.

### 2. Hours Reasonably Expended

A party seeking attorneys' fees must present "contemporaneous time records that show for each attorney, the date, the hours expended, and the nature of the work done." Ontel Products Corp. v. Amico International Corp., No. 07 Civ. 7356, 2008 WL 4200164, at *5 (S.D.N.Y. Aug. 19, 2008) (internal quotation marks omitted). SEIU submitted a report, based on contemporaneously recorded time records, providing this information. (Transactions at 1-5). The work included the drafting, preparation, and filing of the Complaint, the Application for Default Judgment, and the Proposed Findings of Fact and Law. (Cameron 8/29/13 Aff., ¶ 9).

Attorneys worked a total of 21 hours on the case, paralegals another 8.1 hours. (Cameron 8/29/13 Aff., ¶ 10). While "[l]arge-scale WARN Act cases may be complicated and time-consuming," that

is not the case here. <u>Guippone v. BH S & B Holdings, LLC</u>, No. 09
Civ. 1029, 2011 WL 5148650, at *11 (S.D.N.Y. Oct. 28, 2011)
(considering attorneys' fees in WARN Act class action settlement).
The defendant defaulted, and issues of liability were not complex.
Courts in this district often take into account the
"straightforward nature of the work performed [and] the relative
simplicity of the issues involved" when determining attorneys'
fees. <u>Palacios v. Z & G Distributors, Inc.</u>, No. 11 Civ. 2538, 2013
WL 4007590, at *6 (S.D.N.Y. Aug. 6, 2013); <u>see also</u> <u>Ibarra v. HSCS
Corp.</u>, No. 10 Civ. 5109, 2012 WL 3964735, at *4 (S.D.N.Y. 2012).
Here, the full 29.1 hours of time were reasonably expended.
<u>Greathouse v. JHS Security, Inc.</u>, No. 11 Civ. 7845, 2012 WL
3871523, at *10 (S.D.N.Y. Sept. 7, 2012), <u>report and recommendation
adopted as modified</u>, 2012 WL 5185591 (S.D.N.Y. Oct. 19, 2012)
(finding 24.2 hours a reasonable number of hours spent on a FLSA
default case).

    3. <u>Costs</u>

The plaintiff also claims total costs of $610 for the expenses
associated with filing and serving the Complaint. (Cameron 8/29/13
Aff., ¶ 11). Fee awards include "'reasonable out-of-pocket
expenses incurred by attorneys and ordinarily charged to their
clients.'" <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F. 3d 748, 763 (2d
Cir. 1998) (quoting <u>United States Football League v. National</u>

<u>Football League</u>, 887 F. 2d 408, 416 (2d Cir. 1989)).  The costs here are reasonable and should be granted.

<u>Conclusion</u>

For the reasons set forth above, I recommend that SEIU be awarded $501,298.69 in back pay due under the federal and NY WARN Acts, $4,647.00 in attorneys' fees, and $610.00 in costs, for a total monetary award of $506,555.69.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objection shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable John G. Koeltl, Room 1030, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully Submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          November 13, 2013

20

Copies mailed to:

Susan J. Cameron, Esq.
Jorge A. Cisneros, Esq.
Levy Ratner, P.C.
80 Eighth Avenue, Floor 8
New York, NY 10011

John Langrod, Ph.D.
Chair, Board of Directors
South Bronx Mental Health Council, Inc.
2109 Broadway, # 506
New York, NY 10023